UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
NATALY LAZARO and JOSE MOLINA,

                    Plaintiff,   **REPORT AND RECOMMENDATION**
                                                                                                   19 CV 7314 (LDH)(LB)

  -against-

LIBERTY CAR SERVICE, INC. and
RAY PERRY,

                    Defendants.
----------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

      Plaintiffs bring this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and New York Labor Law ("NYLL"), N.Y. LAB. LAW §§ 650 et. seq. alleging that defendants failed to pay them the minimum wage, required overtime wages, and spread of hours pay and failed to provide required wage notices and statements. Compl. ¶¶ 1-3, ECF No. 1. The Honorable LaShann DeArcy Hall referred the parties' motion for settlement approval to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the reasons stated herein, it is respectfully recommended that the parties' motion for settlement approval should be denied without prejudice.

## BACKGROUND AND PROCEDURAL HISTORY

      Plaintiffs Nataly Lazaro[1] and Jose Molina worked for defendants' transportation business from September 2019 through October 2019 performing manual and clerical work, including processing credit cards. Compl. ¶¶ 16-18. Plaintiffs received about $12 an hour, which they allege was lower than New York's legally required minimum wage, and never received overtime

---

[1] The docket lists plaintiff Nataly Lazaro's last name as "Lozaro." However, the complaint, ECF 1, and the motion for settlement approval, ECF 20, consistently spell plaintiff's last name as "Lazaro." Accordingly, the Clerk of Court is directed to correct the docket to reflect plaintiff's name as Nataly Lazaro.

1

even though they worked 70-80 hours per week. Id. ¶¶ 19-21. Defendants never provided plaintiffs with spread of hours pay, even though plaintiffs worked 11 or more hours per day. Id. ¶ 24. Plaintiffs also allege that they never received proper wage notices or wage statements. Id. ¶¶ 25-26.

Plaintiffs commenced this action on December 31, 2019 seeking unpaid wages, liquidated damages, and attorney's fees.[2] Id. ¶¶ 57-60. Defendants answered the complaint on February 20, 2020. ECF No. 6. The parties participated in a mediation on November 12, 2020 and reached a settlement. They now request approval of their settlement agreement pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015). In support of their application, the parties provide a letter motion (Mot. Settl., ECF No. 20); a settlement agreement and release regarding plaintiff Lazaro's claims ("Lazaro Agreement," ECF No. 20-1); a settlement agreement and release regarding plaintiff Molina's claims ("Molina Agreement," ECF No. 20-2); plaintiffs' counsel's time and billing records (ECF No. 20-3); and plaintiffs' counsel's receipts for costs (ECF No. 20-4).

## DISCUSSION

**I. Standard for Settlement Approval**

Pursuant to Cheeks v. Freeport Pancake House, Inc., "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect. 796 F.3d 199, 206 (2d Cir. 2015). This approval requirement is intended to ensure FLSA's objective of insuring that all workers are fairly compensated. Id. (quoting A.H. Phillios, Inc. v. Walling, 324 U.S. 490, 493 (1945)). Review also furthers FLSA's remedial purpose, namely preventing abuse while accounting for the uneven

---

[2] This matter was originally assigned to Magistrate Judge James Orenstein but has been reassigned to me.

power dynamic between employers and employees. Id. at 207. As discussed by the Cheeks Court, certain provisions within a settlement agreement are unacceptable when subjected to judicial review. Id. Such provisions include: (1) restrictive confidentiality provisions; (2) overbroad releases that waive all claims, especially those with no connection to a plaintiff's wage-and-hour case; (3) and awards of attorney's fees without record support. Id. at 206 (quoting Lopez v. Nights of Cabiria, 96 F. Supp. 3d 170, 177-82 (S.D.N.Y. 2015).

In reviewing FLSA settlement agreements, Courts are ultimately seeking to determine if the parties' proposed resolution is "fair and reasonable." Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quoting Mosquera v. Masada Auto Sales, Ltd., No. 09-CV-4925(NGG), 2011 WL 282327, at *1 (E.D.N.Y. Jan. 25, 2011)). Although not an exhaustive list, this reasonableness determination includes review of the following factors:

> (1) [T]he plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion.

Id. (citing Medley v. Am. Cancer Soc., No. 10-CV-3214(BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)). Certain factors weigh against approving a settlement, including:

> (1) [T]he presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstances will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of 'a mature record' and 'a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

Id. (internal quotation marks omitted). There is a strong presumption in favor of finding a proposed FLSA settlement agreement to be fair and reasonable because the Court can never be "in as good of a position as the parties to determine the reasonableness of an (sic) FLSA settlement." Martinez Aguilar v. VBFS Inc., No. 19-CV-621(JLC), 2020 WL 1036071, at *1

(S.D.N.Y. Mar. 3, 2020) (internal quotation marks omitted) (quoting Souza v. 65 St. Marks Bistro, No. 15-CV-327(JLC), 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015)); Cortes v. Bronx Bar and Grill, LLC, No. 19-CV-2819(SN), 2019 WL 6318430, at *1 (S.D.N.Y. Nov. 25, 2019) (quoting Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013)). Although the Court believes the financial terms of the settlements are reasonable, the agreements' vague releases prevent approval at this time.

**II. The Parties' Settlement Agreements**

The parties' two settlement agreements, one for Ms. Lazaro and one for Mr. Molina, differ only in the amounts awarded to each plaintiff. Compare Lazaro Agreement with Molina Agreement. Defendants agree to pay a total of $9,000 to settle both plaintiffs' claims. Mot. Settl. 2. In exchange for releasing their claims against defendants, plaintiffs Lazaro and Molina will receive $4,947 and $4,053 respectively. Lazaro Agreement ¶ 2; Molina Agreement ¶ 2. After payment of attorney's fees and costs, plaintiff Lazaro will receive $3,000 and plaintiff Molina will receive $2,404. Mot. Settl. 2. Their counsel will receive $2,702, plus $894 in costs. Id. Payment to plaintiff Lazaro will be made as follows: three payments to plaintiff of $500, "less applicable taxes and withholdings, to be reported on an IRS form W-2;" three payments to plaintiff of $500, "representing liquidated and other damages, to be reported on an IRS Form 1099-MISC;" three payments to plaintiff's counsel of $649, "representing partial payment of a 1/3 contingency fee ($1,500) plus costs ($447)." Lazaro Agreement ¶ 2(a)-(c). Payment to plaintiff Molina will be made as follows: three payments to plaintiff of $400, "less applicable taxes and withholdings, to be reported on an IRS form W-2;" three payments to plaintiff of $401.33, "representing liquidated and other damages, to be reported on an IRS Form 1099-

4

MISC;" three payments to plaintiff's counsel of $549.66, "representing partial payment of a 1/3 contingency fee ($1,202) plus costs ($447)." Molina Agreement ¶ 2(a)-(c). The first payments are due within 30 days of Court approval of the agreements, the second payments are due within 60 days, and the third payments are due within 90 days. Lazaro Agreement ¶ 2; Molina Agreement ¶ 2. The agreements contain a mutual release. Defendants agree to release plaintiffs "from any and all claims, debts, obligations, or liability…that they had or may have" against plaintiffs. Lazaro Agreement ¶ 2(e); Molina Agreement ¶ 2(e). Plaintiffs agree to "release[] and forever discharge[] Defendants of and from any and all claims asserted in this action…consistent with Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015)." Lazaro Agreement ¶ 4; Molina Agreement ¶ 4. The parties also agree that the Court shall retain jurisdiction to enforce the agreement. Lazaro Agreement ¶ 8; Molina Agreement ¶ 8. Neither agreement contains a confidentiality nor a non-disparagement clause.

**A. The Parties' Agreements are Reasonable**

The Court looks to the factors discussed in Wolinsky v. Scholastic, Inc. when determining the reasonableness of the settlement. The first factor is the range of possible recovery. Wolinsky, 900 F. Supp. 2d at 335. Even where a proposed settlement is a far lower percentage of the total amount claimed by a plaintiff, Courts will still approve the settlement in light of a defendant's claimed defenses and the uncertainty of litigation. Sanchez v. DPC New York Inc., 381 F. Supp. 3d 245, 249-50 (S.D.N.Y. 2019); Chowdhury v. Brioni America, Inc., No. 16 Civ. 344(HBP), 2017 WL 5953171, at *2 (S.D.N.Y. Nov. 29, 2017) (approving a settlement where the net recovery was approximately 40% of the claimed damages.) Plaintiff Lazaro alleges that she is owed approximately $4,147.50 in unpaid wages and could receive an additional $7,450 if successful on her wage notice and statement violation claims. Mot. Settl. 1-

2. Plaintiff Molina alleges that he is owed approximately $2,962.50 in unpaid wages and could receive an additional $6,750 if successful on her wage notice and statement violation claims. Id. Defendants dispute both plaintiffs' allegations, including the number of hours each worked, and plaintiffs acknowledge that the law is unsettled regarding recovery for wage notice and statement violations. Id. at 2. The total settlement amount of $9,000 is over forty percent of what plaintiffs assert is the best possible outcome in this case. In light of the genuine dispute among the parties and the uncertainty of plaintiffs' eventual recovery, the Court should find the total settlement amount to be fair and reasonable. See Oxley v. Excellent Home Care Serv., No. 18-CV-2374(RJD)(CLP), 2020 WL 589581, at *2 (E.D.N.Y. Jan. 8, 2020) (finding settlement amount reasonable where there were significant disputes among the parties, including regarding plaintiff's hours) Report and Recommendation adopted by 2020 WL 401772 (E.D.N.Y. Jan. 23, 2020)); Sanchez, 381 F. Supp. 3d at 249-50; Chowdhury, 2017 WL 5953171, at *2.

The factors to be considered also include the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses [and] the seriousness of the litigation risks faced by the parties." Wolinsky, 900 F. Supp. 2d at 335 (internal quotation marks omitted) (quoting Medley, 2010 WL 3000028, at 1*). The parties state that they "desire…to resolve the case early and avoid the significant financial and non-financial costs/harms of litigation." Mot. Settl. 3. The desire to avoid these risks weighs in favor of settlement approval. See Cionca v. Interactive Realty, LLC, No. 15-CV-5123(BCM), 2016 WL 3440554, at *2 (S.D.N.Y. June 10, 2016) (finding a settlement amount reasonable given the "risk and expense" of further litigation).

The Court must also consider whether the settlement "is the product of arm's length bargaining" between the parties. Wolinsky, 900 F. Supp. 2d at 335 (quoting Medley, 2010 WL

3000028, at 1*). Here, the settlement is the product of a "mediation conducted by an experienced FLSA mediator." Mot. Settl. 2. The mediator's involvement supports a finding that the parties' negotiations were fair, and the final product is reasonable. See Vidal v. Eager Corp., No. 16-CV-979(RRM)(ST), 2018 WL 1320659, at *2 (E.D.N.Y. Mar. 13, 2018) (finding the use of mediation to suggest "arm's length bargaining"); Flores v. Mamma Lombardi's of Holbrook, Inc., 104 F. Supp. 3d 290, 305 (E.D.N.Y. 2015) (approving a settlement reached after mediation).

**B. Attorney's Fees**

Prevailing plaintiffs are entitled to recover reasonable attorney's fees under both FLSA and the NYLL but must provide adequate documentary support for the requested amount. Fisher v. SD Prot. Inc., 948 F.3d 593, 600 (2d Cir. 2020) (citing N.Y. State Ass'n for Retarded Child, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983)). Although district courts in the Second Circuit frequently apply a proportionality limit to attorney's fees in FLSA cases, nothing in the statute requires that fees be proportional to the total award amount. Id. at 603. Courts must consider the reasonableness of requested fee amounts in the context of the entire FLSA settlement agreement. See id. at 606.

The lodestar amount, the product of the attorney's hourly rate and the time spent working on the case, is often used to evaluate the reasonableness of requested attorney's fees. See Cegueda-Juarez v. Cleanwear USA 2, Inc., 18-Civ-1604(PAC), 2019 WL 5485253, at *2 (S.D.N.Y. Oct. 25, 2019); Scott v. BK Beasts LLC, No. 17-CV-699(RRM)(PK), 2018 WL 2088280, at *2 (E.D.N.Y. May 3, 2018) (citing Frank v. Eastman Kodak Co., 228 F.R.D. 174, 189 (W.D.N.Y. 2005)). Where, as here, the lodestar amount is used to "cross-check" the requested attorney's fee, the Court need not examine each hour spent working on the case to

determine whether the total amount of time spent on the matter was reasonable. Norris v. Babylon Townhouse Diner Corp., No. 18-CV-3051(AKT), 2019 WL 5540326, at *2 (E.D.N.Y. Oct. 25, 2019) (quoting In Re Citigroup Inc. Sec. Litig., 965 F. Supp. 2d 369, 388-89 (S.D.N.Y. 2013)). However, the Court will look to "(1) counsel's time and labor; (2) the case's magnitude and complexities; (3) the risk of continued litigation (4) the quality of representation; (5) the fee's relation to the settlement; and (6) public policy considerations." Cegueda-Juarez, 2019 WL 5485253, at *2 (citing Lopez v. Ploy Dee, Inc., No 15-CV-647(AJN), 2016 WL 1626631, at *4 (S.D.N.Y. Apr. 21, 2016)).

Plaintiff's counsel directs the Court to Venegas v. Mitchell, 495 U.S. 82, 89-90, and suggests that attorney's fees are governed by counsel's retainer agreement with his clients.[3] Mot. Settl. 3. Counsel has proposed this interpretation of Venegas in other cases before this Court. See e.g., Ceesae v. TT's Car Wash Corp., No. 17-CV-291(ARR)(LB), 2018 WL 1767866, at *3 (E.D.N.Y. Jan. 3, 2018) Report and Recommendation adopted by 2018 WL 741396 (E.D.N.Y. Feb. 7, 2018). As the Court previously stated, Venegas does not hold that a Court must defer to counsel's retainer agreement in cases, such as the present matter, where the Court has the obligation to ensure the settlement is reasonable and fair to plaintiffs. Id. (quoting Gurung, 226 F. Supp. 3d at 230). Fisher v. SD. Prot., Inc., 948 F.3d 593 (2d Cir. 2020), which plaintiffs' counsel also relies on in support of his position, does not change this Court's analysis. There, the Circuit discussed the efficacy of permitting large awards of attorney's fees in otherwise modest FLSA cases to encourage the enforcement of workers' statutory rights. Id. at 604-05. The objective of ensuring that settlement agreements in FLSA cases are fair and the aim of the fee

---

[3] Counsel also cites to another motion for settlement approval, ECF No. 13 in Burton v. City Lumber, Inc., No. 20-CV-3290 (LDH)(LB), in support of his position. Counsel's own motion seeking settlement approval in another matter is far from persuasive authority.

shifting provision in the statute – encouraging attorneys to accept these modest cases – are not mutually exclusive.[4]

Here, the parties' agreement provides that costs of $894 will be deducted from the $9,000 settlement amount and then counsel will receive $2,702, or one-third of the remaining $8,106, in addition to costs. Mot. Settl. 2. The Court has reviewed the records provided by counsel and, given the facts and circumstances of this case, finds the requested one-third amount reasonable and comparable with other amounts awarded in FLSA cases in this Circuit. Flores Galloso v. 3821 Food Corp., No. 20-CV-1940(RA), 2021 WL 860343, at *2 (S.D.N.Y. Mar. 8, 2021); Sicajan Diaz v. Pizza Napolitana, Inc., No. 19-CV-4911(EK)(RML), 2020 WL 8265766, at *4 (E.D.N.Y. Dec. 4, 2020) (approving attorney's fees which represented approximately one-third of a FLSA settlement but less than the accrued fees) Report and Recommendation adopted by 2021 WL 260093 (E.D.N.Y. Jan. 26, 2021).

**C. The Court Should Not Approve the Agreements' Release Provisions**

The Court next turns to the agreements' release provisions. Here, using identical language, the agreements state that plaintiffs release defendants "from any and all claims asserted in this action…consistent with Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015)." This release provision prevents Court approval of the settlement agreements.

In the context of FLSA settlement agreements, general release provisions requiring plaintiffs to give up all claims against defendants, including those having no connection to the underlying wage and hour case, are impermissible. See Gurung v. White Way Threading LLC, 226 F. Supp. 226, 228 (S.D.N.Y. 2016) (denying approval of a settlement agreement which required plaintiffs to release any claims arising out of her employment by defendants). Rather

---

[4] In this case, where plaintiffs were employed for only one month at a low wage, the statute's fee shifting provision almost certainly served as an incentive for plaintiffs' counsel.

than protect plaintiffs, overbroad releases are ripe for abuse and their use was one of the factors which contributed to the Second Circuit's decision in Cheeks, requiring judicial review of FLSA settlements. Id. (quoting Cheeks, 796 F.3d at 206)). Courts generally approve release provisions which, by their specific terms, are limited to wage and hour claims. See, e.g., Flores, 2021 WL 860343, at *2 (collecting cases); Pena v. NB Network Sols., Inc., No. 19-CV-1681(RA); 2020 WL 2614767, at *2 (S.D.N.Y. May 22, 2020); Abreu v. Congregation Yetev Lev D'Satmar Meats & Poultry, Inc., No. 17-CV-272(KAM)(LB) 2019 WL 2526087, at *7 (E.D.N.Y. June 19, 2019).

In conducting its review, the Court is cognizant of the realities of this type of litigation and concerned about the abilities of a FLSA plaintiff to fully understand the extent of a settlement agreement. See Carson v. Team Brown Consulting, Inc., 416 F. Supp. 3d 137, 140 (E.D.N.Y. 2017) ("The typical FLSA plaintiff may be unaware of his ability to challenge the enforceability of a release."). The guiding principle of Cheeks is the prevention of abuse by employers who benefit from an unequal power dynamic, a reality in any employment relationship. Cheeks, 796 F.3d at 207 (citing Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697 706-07 (1945) ("FLSA's primary remedial purpose…[is] to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees"). In this light, vague release provisions, like the ones in plaintiffs' agreements, leave FLSA plaintiffs at risk for abuse.

The release provision in both of plaintiffs' agreements states that plaintiffs release defendants "from any and all claims asserted in this action…consistent with Cheeks v. Freeport Pancake House, Inc." The first portion of the sentence, releasing defendants "from any and all claims asserted in this action," is acceptable. The second clause, limiting the release as

"consistent with" Cheeks, is not. The Court should reject this language because the release fails to properly delineate the terms of the parties' agreements.[5] Drafting a settlement agreement in a FLSA case should be a straightforward task. The agreement should be clear and explicit so that the parties can understand it. Rather than simply state that the release is limited to plaintiffs' wage and hour claims – which is not difficult – the parties' agreement as drafted is lazy and unproductive. A release must clearly state what claims have been addressed and given up by the parties. The plaintiffs herein are not lawyers. The language of the release must be tailored to their claims that their employer failed to pay them minimum wage. They cannot be expected to consult a decision of the Court of Appeals to determine what claims they have waived against their employer. Plaintiff's counsel, having represented the plaintiff in Cheeks, should be uniquely aware of the concerns that motivated the Cheeks decision to protect such individuals. The Court should not approve the parties' settlement agreements as presented. The release in the settlement agreements must clearly specify what claims the plaintiffs are giving up in exchange for the settlement award and should not cite to caselaw.

## CONCLUSION

Accordingly, it is respectfully recommended that the parties' motion for settlement approval should be denied without prejudice. The parties should be given 14 days leave to refile a motion for settlement approval with release language that conforms to this Report.

---

[5] As the Second Circuit instructed in Fisher v. SD. Prot. Inc., the Court lacks the authority to redraft the parties' agreement or to strike out portions that it finds objectionable. 948 F.3d 593, 605 (2d. Cir. 2020). The Court may only "reject the agreement or give the parties an opportunity to revise it." Id.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: March 23, 2021
       Brooklyn, New York